**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 C 5391 |
| v. ) | |
| ) | |
| ANDREW W. CARR, et al., ) | HONORABLE DAVID H. COAR |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff Aetna Insurance Co.'s motion for summary judgment against the last remaining defendant, Community Physical Medicine and Rehabilitation P.C. Aetna argues that Community is liable for the fraudulent billing of its employees, Dr. Carr and Dr. Ross. For the reasons that follow, the motion is GRANTED.

**BACKGROUND**

The facts are essentially undisputed.[1] Dr. Andrew Carr and Dr. Timothy Barber are chiropractors who bought Community in 2006 from a doctor who was retiring. (Plaintiff's Statement of Facts ¶ 6.) Barber spends most of his time in New York and also runs another clinic, Metro Chiropractic, there. (Id. ¶ 12-13.) Community is located in Illinois, where Carr resides. (Id. ¶ 3.) Carr left the practice in December 2008, and was replaced by Dr. John Ross, who was there only a few months. (Id. ¶ 20, 26-27.) Community closed its doors sometime in 2009 because it had never become profitable.

Only Carr, and later Ross, could generate bills for Community. (Id. ¶ 28.) Essentially, Carr or Ross would fill out a patient routing slip indicating what services they performed, and the front desk personnel (at the end only one person) would enter that information into a

---
[1] Community's two-page Rule 56 response identifies only three clarifications to Aetna's facts and two additional facts.

spreadsheet. (Id. ¶30.) That spreadsheet went to Michael Sierra, who worked in Dr. Barber's New York office. (Id. ¶ 31.) Sierra input the information into a computerized billing system, and from that system sent bills to insurers such as Aetna. (Id. ¶ 32.) No one reviewed the final bills. (Id. ¶ 36.) Aetna paid those bills either electronically to Community's tax identification number or via checks made payable to Community and sent to either Community or to Barber's New York office. (Id. ¶ 34.) Many of them were sent to Carr's attention at Community's address. (Id. ¶ 60.) Hard copy checks were cashed by Community. (Id. ¶ 35.)

At some point, patients began complaining that they and their insurance companies were being billed by Community for services that were never performed. (Id. ¶39, 43-44, 49-50.) In one particularly egregious case, Dr. Carr billed Aetna for 102 different procedures allegedly performed on a family the year after they had left the state. (Id. ¶ 44.) In another case, a patient complained that in addition to billing Aetna for procedures that were never performed on her and one of her children, Carr also billed Aetna for procedures purportedly performed on her other child—who had never even been a patient of Carr's. (Id. ¶ 50.) After Ross replaced Carr, Ross repeatedly billed patients for services both in Illinois and in New York on the same days. (Id. ¶ 61.)

An Aetna investigator, Donna Dziedzic, tried repeatedly to contact Carr to review services rendered to Aetna members, but for over a year Carr failed to respond to her written and verbal requests. (Id. ¶ 46-48.) Eventually she spoke to Carr, who claimed that his finance company, Coast Capital Finance, had changed the dates of service on his bills. (Id. ¶51.) He later told Dziedzic that he was aware of numerous billing errors and would make reparations to Aetna, but never did so. (Id. ¶ 54-57.) To date Aetna has not been repaid for its overpayment of

claims. (Id. ¶ 64.) However, in this litigation it has secured default judgments against Carr and Coast Capital.

## LEGAL STANDARD

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Community raises no genuine issues of fact, so the only question is whether Aetna is entitled to judgment as a matter of law.

## ANALYSIS

Aetna argues that Community is responsible for statutory or common law fraud under the doctrine of either actual or apparent authority. The Illinois Insurance Fraud statute holds a defendant liable when it "knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of an insurance company . . . by the making of a false claim or by causing a false claim to be made on any policy of insurance issued by an insurance company," and "intending to deprive [the company] permanently of the use and benefit of that property." 720 ILCS 5/46-1(a). Similarly, common law fraud in Illinois requires "(1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hefferman v. Board of Trustees of Illinois Community College Dist. 508*, 310 F.3d 522, 525 (7th Cir. 2002) (quoting *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 536 (Ill. 1989)) (internal quotation marks omitted). It seems apparent that Carr and Ross's fraudulent billing meets both of these definitions, and Community does not argue otherwise.

Community does contend in its response brief that it is not liable as a factual matter because, according to Community, some of Aetna's checks were made out to "Premier Health" rather than Community. It made no mention of these alleged facts in its statement of facts, and does not properly support them.[2] Furthermore, even taking Community's argument at face value, that some of the fraud may not be imputable to Community does not excuse it from the remainder. And Community concedes that at least some of the payments on the fraudulent bills were made out to Community. (Resp. Br. at 3.)

An employer is responsible for the torts its employees commit while acting within the scope of their employment. *Schurr v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 765 (7th Cir. 2009) (applying Illinois law). It is clear that Carr and Ross were authorized to submit bills as part of their employment. Community suggests that their selfish motives take their conduct outside the scope of their employment, but that does not relieve Community of liability. If the agent is authorized to submit a valid bill on behalf of the principal, but instead submits a false bill, "the principal is liable even if the agent is acting solely to feather his own nest." *See Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 471 (7th Cir. 1999); *see also Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66. The basis for liability is the agent's apparent authority to take the action that he took. *Am Soc'y of Mech. Eng'rs, Inc.*, 456 U.S. at 565-66. Apparent authority arises when the principal causes a third party to reasonably believe that the agent's conduct on the principal's behalf is authorized, and the third party relies on the agent's authority to its own detriment. *Sphere v. Drake Ins. Ltd.*, 376 F.3d 664, 673 (7th Cir. 2004); *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 & n. 15 (7th Cir.1998); *York v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 854 N.E.2d 635, 655-60 (Ill.

---

[2] The support it offers is a letter from Community's counsel to Aetna dated in 2008, in which counsel opines what discovery had revealed at that point. Counsel's opinion is not proper evidence on this issue.

2006); RESTATEMENT 2D OF AGENCY §§ 8, 27 (1958); *see also* RESTATEMENT 3D OF AGENCY § 2.03 (2006).[3]

Here, Community led Aetna to believe that Carr and Ross's bills were authorized, as it submitted them to Aetna on the doctors' behalf (without further inquiry into their accuracy). And Aetna relied on that authority when it paid those bills. That is enough to link Community to the doctors' conduct and serve as the basis of its liability under the doctrine of apparent authority. Even if Community did not profit from the overpayments (e.g., if the doctors intercepted the cash), its lack of benefit does not preclude its liability under this theory.

## CONCLUSION

For the reasons stated above, the Plaintiff's motion for summary judgment against defendant Community Physical Medicine and Rehabilitation P.C. is GRANTED. Under Rule 54(d), liability on the contract count (apparent authority) is established. Because liability has been established, it is unnecessary to consider Aetna's other claims. Plaintiff shall file an itemization of damages by February 1, 2011. The matter is set for prove-up as to the amount of damages on February 15, 2011 at 9:00 a.m.

Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge

**Dated:** December 30, 2010

---

[3] Illinois law governs the issue of apparent authority, but Illinois is in agreement with both federal common law and the *Restatement (Second) of Agency*. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000).

5